IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARTIN THOMAS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case. No.: 2:07-CV-1702-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Martin Thomas ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

**I.      Procedural History**

Plaintiff protectively filed his application for SSI on January 25, 2005.  (Tr. 50-53). Plaintiff's application was denied initially, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 28-32, 37).  Plaintiff's case was heard by ALJ Jack F. Ostrander on May 3, 2006. (Tr. 229-70).  In his January 4, 2007 decision, the ALJ determined that Plaintiff was not eligible for SSI because he did not have an impairment or a combination of impairments that meet the disability requirements of the Act and that Plaintiff retained the residual functional capacity ("RFC") to perform at least light exertional work. (Tr. 13-27).  The ALJ also determined that although Plaintiff

was unable to perform past relevant work due to his physical limitations, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 25-26).

After the Appeals Counsel declined Plaintiff's request for a review of the ALJ's decision on July 20, 2007, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. (Tr. 3-5). Plaintiff timely filed a civil action for review by this court on September 18, 2007. (*See* Pl's Complaint of Sep. 18, 2007).

## II. ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform

his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

> [T]he district court must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).

Plaintiff was born on June 9, 1959. (Tr. 51). At the time of the hearing in question, Plaintiff was forty-six years old and had completed the ninth grade. (Tr. 68, 236-37). Plaintiff had previously worked in unskilled jobs with light to heavy levels of exertion as a sander, dishwasher, clothes stacker/baler, janitor, and laborer. (Tr. 25, 246-56). Plaintiff alleges that he suffers from mild mental retardation and impairment of his left leg due to a prior fracture of his femur. (Tr. 16, 29, 64). According to Plaintiff, due to these problems he has been unable to engage in substantial gainful activity since November 17, 2004. (Tr. 16, 61).

Plaintiff sustained multiple fractures to his left hip when he says he was assaulted in November 2004. (Tr. 16, 240). These fractures required Plaintiff to undergo several surgeries. Plaintiff was originally treated by Dr. John Crompton. (Tr. 16, 179, 184, 242). Plaintiff testified that during the span of time between November 2004 and February 8, 2005, he recovered sufficiently to fully bear weight on his left leg and Dr. Crompton advised him to stop using crutches. (Tr. 16, 108, 240-42).

In April 2005 Plaintiff was examined by Dr. Lisiak and found to have pain in his left hip as well as a marked decrease in the range of motion in his left knee. (Tr. 111-17). These physical limitations placed Plaintiff in a "sedentary category" in which less than one to two hours of standing or walking would be allowable in an eight hour period. (Tr. 17). Dr. Lisiak determined that Plaintiff had no impairment to the upper body and would be able to perform work in a seated position with no limitation. (Tr. 17, 116). Plaintiff underwent physical therapy from November 2005 until January 2006 after which he was found to have reduced knee strength, but normal hip strength and normal range of motion in both joints. (Tr. 134-54).

Plaintiff was evaluated by Dr. Romeo on June 28, 2006 and found to have a slightly decreased range of motion in the left hip and left knee, but an otherwise normal post-hip replacement left leg and hip as shown by X-ray. (Tr. 18, 210-21). Dr. Romeo concluded that although Plaintiff has an antalgic gait and used a cane to walk, he could stoop, kneel, crouch, and walk on heels and toes to the right. (Tr. 18, 218). He concluded that Plaintiff could stand 6-7 hours, walk 6-7 hours and sit with no limitations. (Tr. 18, 219). Dr. Romeo further concluded that Plaintiff could constantly lift 10 pounds and carry 0 pounds, frequently lift 20 pounds and carry 5 pounds, and occasionally lift 30 pounds and carry 10 pounds. (Tr. 18, 219).

Plaintiff testified before the ALJ that he still suffers from moderate pain in his back that is increased by standing and walking. (Tr. 19, 240-43). Plaintiff testified that he can walk approximately two blocks before stopping due to pain, or stand for 15 minutes before sitting. (Tr. 19, 242-43). Plaintiff claims he can sit for 10 minutes before he needs to stand up to relieve his back pain. (Tr. 243). Furthermore, he contends he is able to pick up a gallon of milk with no pain. (Tr. 19, 244).

Plaintiff's first psychological evaluation was conducted on April 21, 2005 by Dr. Boll. Plaintiff achieved a WAIS-III verbal IQ score of 61, a performance IQ score of 60, and a full scale IQ score of 57. (Tr. 16, 110). Dr. Boll noted Plaintiff "ambulated adequately and conducted himself independently." (Tr. 16, 110).

Dr. Ronald Meredith conducted Plaintiff's second psychological exam on June 23, 2006. (Tr. 200-06). On this exam, Plaintiff achieved a WAIS-III verbal IQ score of 67, a performance IQ score of 69, and a full scale IQ score of 65. Dr. Meredith noted that Plaintiff exhibited no impairment of general memory function and would have "no significant problem recalling and working with recently acquired non-complex information in situations requiring ongoing or completing cognitive activities." (Tr. 18, 200-06). Dr. Meredith also noted that Plaintiff was able to walk to the telephone and the restroom without using his cane and "appeared to be in no distress and expressed no discomfort." (Tr. 18, 208).

Plaintiff alleges no difficulty taking care of his personal needs and daily affairs, and has no apparent history of problems fulfilling his former employment duties due to mental deficiencies. (Tr. 19-20, 262-64). Plaintiff further alleges no difficulties with interpersonal relationships at work, and testified during the hearing before the ALJ that in his previous jobs "I think I got along with everybody." (Tr. 255). School records were not available and no evidence was presented to show mental deficiency prior to the age of 22. (Tr. 20).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability. (Tr. 16). The ALJ determined that Plaintiff has a severe combination of impairments of status post fracture of left femur and mental retardation, although he found that his impairments, considered either alone or in combination, fail to meet or medically equal the criteria

of an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16-20). According to the ALJ, Plaintiff's subjective complaint of debilitating pain which prevents him from working is inconsistent with the medical evidence that shows adequate healing of his leg fracture, as well as a lack of medical treatment for pain, *i.e.*, narcotic pain medication or a referral to pain management. (Tr. 24). The ALJ also determined that in spite of obtaining full scale IQ scores of 57 and 65, evidence in the record shows Plaintiff having only a "mild limitation of daily activities, social functioning, or maintenance of concentration, persistence or pace, with no episode of decompensation or evidence of the [Listing 12.05C] criteria." (Tr. 20). Additionally, the ALJ noted that Plaintiff had failed to produce any evidence of adaptive functioning deficits initially manifested before age 22. (Tr. 20).

The ALJ determined that Plaintiff could not perform any of his past relevant work. (Tr. 25). He found that Plaintiff retains the RFC to perform light exertional work in a work environment with a sit/stand option, performing simple (not complex) tasks, with a maintenance of attention and concentration at those tasks for two hours at a time for an eight hour day. (Tr. 20-21). The ALJ further determined that Plaintiff would be best suited for jobs in which he would not be exposed to unprotected heights, dangerous equipment, ropes, scaffolds, ladders, pushing or pulling with the lower left extremity, or required reading and writing. (Tr. 20-21). He found that Plaintiff could not perform any of his past relevant work. (Tr. 25).

During the hearing, the ALJ called a vocational expert ("VE") to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 296-300). The VE testified that even with all of his physical and mental limitations, Plaintiff could work as a ticket seller, a parking lot attendant, or a cashier so long as these jobs were either sitting or had a sit/stand option. (Tr. 26, 267-68). According to the VE, in the U.S. there are 120,000 ticket seller jobs, 66,000

parking lot attendant jobs, and 1,000,000 cashier jobs. (Tr. 26, 267-68). The VE testified that in Alabama there are 2,700 ticket seller jobs, 600 parking lot attendant jobs, and 56,000 cashier jobs. (Tr. 26, 267-68). Based on this testimony, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is capable of performing these jobs which exist in significant numbers in the national and regional economy. (Tr. 26).

### III.   Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed and benefits awarded, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. at 7). Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied. (*See* Pl.'s Mem. at 1). Specifically, Plaintiff argues that the ALJ erred in failing to find disability under listing 12.05C for the following reasons: (1) to satisfy the mental retardation prong of Listing 12.05C, no evidence of adaptive functioning deficiency prior to age 22 need be presented by Plaintiff where an I.Q. test administered after age 22 shows Plaintiff to have a valid I.Q. score between 60 and 70 (*see* Pl.'s Mem. at 5-6); (2) the ALJ failed to properly consider the combined effect of Plaintiff's mental and physical impairments as required under Listing 12.05C; and (3) the ALJ's finding of Plaintiff's RFC affords too much weight to the opinion of the post-hearing consultative physician and is therefore against the weight of the evidence.

### IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42, United States Code, Sections 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal and an award of benefits. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

> **A.     The ALJ Did Not Err in Finding that Plaintiff Did Not Meet Listing 12.05C for Mild Mental Retardation Because Plaintiff Showed No Evidence of Adaptive Functioning Deficiency Prior to Age 22.**

In order to meet the requirements of Listing 12.05C, Plaintiff must show:

> a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.

The Eleventh Circuit has recognized that a "manifested deficit in adaptive behavior before age 22" must be proven by a plaintiff seeking disability benefits under section 12.05. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff's assertion that this element is not a requirement to qualify for benefits under Listing 12.05C is therefore off the mark. (*See* Pl.'s Mem. at 6).

Plaintiff cites *Gant v. Sullivan*, 773 F.Supp. 376 (S.D. Fla. 1991) and *Lowry v. Sullivan*, 979 F.2d 835 (11th Cir. 1992) for the proposition that no evidence of an adaptive functioning deficit prior to age 22 needs to be shown if nothing in the record reflects an incident in which Plaintiff suddenly became mentally retarded. (*See* Pl.'s Mem. at 5). No such incident is present in the record of this case. Nevertheless, this standard was not stated by *Lowry*, but rather by *Gant* and *Durham v. Apfel*, 34 F.Supp.2d 1373, (N.D. Ga. 1998); therefore, it simply is not binding precedent for this court. The controlling standard on this issue is set forth by *Hodges v. Barnhart*: in the absence of IQ test results or evidence of sudden trauma that can cause retardation, the Plaintiff's sub-average adult IQ score creates a rebuttable presumption of a deficit in adaptive functioning prior to age 22. *Hodges*, 276

F.3d 1265 (11th Cir. 2001). *See also Jones v. Astrue*, 494 F.Supp.2d 1284 (N.D. Ala. 2007)(recognizing the *Hodges* rebuttable presumption).

The *Hodges* decision recognized the "presumption that mental retardation is a condition that remains constant throughout life" and that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [claimant's] life." *Hodges*, 276 F.3d at 1266, 1268. In *Hodges*, there were no IQ tests administered prior to the claimant turning twenty-two, nor did the claimant have any school records or transcripts. *Id.* at 1267-68. Indeed, the "record [was] devoid of any evidence relating to Hodges' mental capabilities before the age of 22." *Id.* at 1268. Based on this lack of evidence, the ALJ in *Hodges* found that the plaintiff in that case had failed to show that she had manifested deficits in adaptive functioning before age twenty-two as required by Listing 12.05(C). *Id.* at 1268. The Eleventh Circuit reversed and remanded, stating that the ALJ erred in failing to presume, based on Hodges' adult IQ test scores and the absence of sudden head trauma, that Hodges experienced deficits in adaptive functioning prior to age twenty-two as required by Listing 12.05(C). *Id.* at 1269.

Here, unlike in *Hodges*, the record contains facts to rebut the presumption of adaptive functional deficiency by examining Plaintiff about his life and activities prior to age 22. (*See* Tr. 20, 23). The ALJ discussed at length with Plaintiff his daily activities and work history, starting with Plaintiff's first job at age 16. (Tr. 251-56). Plaintiff worked as a potato sacker for two years until he turned 18, whereupon he secured himself a similar, higher paying job. (Tr. 251-52). During this time, Plaintiff lived with his mother, but bought his own clothes, a car, managed his own money, and had a girlfriend. (Tr. 252). Plaintiff also testified that due to his inability to read or do math, he failed to pass fifth grade so many times that the school eventually moved him to ninth grade at age

16. (Tr. 250-51). Based on the ALJ's examination of Plaintiff, it appears that Plaintiff had a relatively normal life, was able to obtain and hold employment, care for himself and his mother, and have normal social relationships. (Tr. 250-53). Despite his inability to complete high school, there was substantial evidence in the record to conclude that Plaintiff had no deficit in adaptive functioning from age 16 to 22. *See, e.g.*, *Whetstone v. Barnhart*, 263 F.Supp.2d 1318 (M.D. Ala. 2003)(in the absence of any adolescent IQ scores or proof of special education, a history of continued employment and independent daily living starting prior to age 22 may be used to rebut a *Hodges* presumption of deficiency in adaptive functioning).

      Though the ALJ did not explicitly reference *Hodges* as the controlling legal standard, his opinion recognizes that there were no school records or other evidence of adaptive functioning deficits present before age 22. (Tr. 20). The ALJ cited the dearth of evidence of mental retardation in Plaintiff's history including his ability to work full time, manage his personal affairs and money, and remain employed full-time until November 2004. (Tr. 20). Furthermore, the record shows that Plaintiff never previously had any difficulties obtaining or keeping employment due to any mental disability, nor did he claim or apparently have difficulties in his personal life or relationships due to mental retardation. (Tr. 251-52). The ALJ specifically inquired into Plaintiff's work history prior to age 22, and the record shows that Plaintiff began his employment history (working and managing his money) at age 16. (Tr. 251). The ALJ thereby had substantial evidence to rebut the presumption that Plaintiff had any deficit in adaptive functioning prior to age 22.

**B.	The ALJ Properly Considered the Combined Effect of Plaintiff's Mental and Physical Impairments But Committed Harmless Error In Failing to Resolve the Validity of Plaintiff's I.Q. Scores.**

Plaintiff also argues (correctly) that the ALJ must consider the combined effects of all impairments in evaluating disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). In determining whether a plaintiff meets the criteria of Listing 12.05C, the ALJ must consider the combined effects of impairments on the plaintiff's functional capacity in determining whether the listing is equaled. *Davis v. Shalala*, 985 F.2d 528 533-34 (11th Cir. 1993). A claimant meets Listing 12.05(C), when the following are shown: 1) a valid I.Q. score of 60 to 70 inclusive; and 2) a physical or other mental impairment imposing additional and significant work-related limitation of function. *Lowery*, 979 F.2d at 837. Though the ALJ addressed Plaintiff's mental and physical impairments individually, he also properly addressed the combined effects of the impairments on Plaintiff's ability to work; therefore, he did not commit any error in this regard.

In addressing Plaintiff's physical limitations, the ALJ discussed with particularity the findings of examining physicians as well as Plaintiff's own testimony regarding his injuries. (Tr. 21-24). After considering all of the evidence, the ALJ concluded that Plaintiff retained the RFC to perform light work with specific restrictions imposed due to Plaintiff's diagnosed mental limitations. (Tr. 24). Specifically, the ALJ found "claimant has residual functional capacity to perform, at least, light exertional work [involving] simple not complex tasks with maintenance of attention and concentration at those tasks for two hours at a time for an 8 hour day provided customary breaks are given and work changes are gradual and well explained." (Tr. 20). The ALJ therefore properly considered the combined effect of the impairments on Plaintiff's ability to work and rendered his opinion accordingly.

However, there is a question about whether the ALJ failed to clearly apply the proper legal standard with regards to evaluating the credibility of Plaintiff's I.Q. test results.  In addressing Plaintiff's mental limitations, the ALJ concluded that Plaintiff had no more than "mild" limitations notwithstanding his I.Q. scores below 70.  (Tr. 19-20, 200-06).  A valid I.Q. score need not be conclusive of mental retardation where it (the I.Q. score) is inconsistent with other evidence in the record as to a claimant's daily activities and behavior. *Lowery*, 979 F.2d at 837 *citing Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).  Although the evidence in *Popp* was substantially more conclusive that the plaintiff there did not suffer from mental retardation (had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher), this does not mean that in this case there was not substantial evidence that Plaintiff failed to exhibit the level of mental impairment required by Listing 12.05 as found by the ALJ.  As discussed *supra*, Plaintiff's work history and ability to live independently constitute substantial evidence of a lack of deficit in adaptive functioning.  *Popp*, 779 F.2d 1497; *Whetstone*, 263 F.Supp.2d 1318.

What is unclear in this case is whether the ALJ chose to reject Plaintiff's IQ scores as invalid or incredible or whether he accepted their validity and simply chose to weigh them with all the other evidence of Plaintiff's work history (which would be error).

> Although the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid and finds that the claimant meets or equals the criteria of a listed impairment.

*Lowery*, 979 F.2d at 837.  The ALJ explains in his opinion, "[a]s indicated by his IQ scores, the claimant has no deficits in adaptive behavior in any area besides cognitive functioning."  (Tr. 20).

This statement suggests that the IQ scores are to be accepted as valid, and that they are to be used to support a conclusion that Plaintiff is not impaired according to the criteria of Listing 12.05C. Furthermore, in Finding #2 of the ALJ's decision, the ALJ states that Plaintiff "has the following severe impairments: . . . mental retardation," then goes on to cite the test results of Dr. Boll and Dr. Meredith. (Tr. 16). Though the ALJ may invalidate an IQ score as incredible in light of the evidence under *Popp*, *Lowery* requires that once accepted as valid, an IQ score may not be so invalidated. To the extent the ALJ committed error, however, it is harmless. This is the case because Plaintiff has failed to establish the required element of showing a deficit in adaptive functioning prior to age 22 as discussed *supra*.

      C.      **The ALJ's Determination of Plaintiff's RFC is Supported By Substantial Evidence.**

Plaintiff argues that the ALJ's RFC findings are against the weight of the evidence and that the ALJ "too readily adopted the opinion of the post-hearing consultative physician." (*See* Pl.'s Mem. at 6). This argument is without merit.

An ALJ is required to state with particularity the weight given to different medical opinions and the reasons for assigning different weights to these opinions when determining a claimant's RFC. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The opinion of a treating physician must be given substantial weight unless "good cause" is shown to the contrary. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

The ALJ in this case considered the reports and findings of all treating physicians and psychologists and gave "substantial weight to the medical record as a whole," especially the radiological findings and the consultative examination of Dr. Meredith. (Tr. 24). The ALJ stated that the reports of non-examining physicians were considered, but "to the extent such reports conflict with those of examining and treating physician[s], they are not entitled to persuasive weight." (Tr. 25). It does not appear that the ALJ assigned undue weight to any one medical opinion. Indeed, he stated with particularity the findings of each physician and the weight given to each opinion. (Tr. 22-24). The main discrepancy discussed by the ALJ was not between any two medical opinions, but rather between Plaintiff's own subjective complaints of pain, limitations of physical motion, and claimed level of literacy which the ALJ found incongruent with the body of medical and other evidence. (Tr. 24). The ALJ did not err by finding Plaintiff's testimony to be less credible than the reports of the examining doctors. Accordingly, the ALJ used proper legal standards in determining Plaintiff's RFC and substantial evidence appears in the record to support this determination.

**VI.    Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. Therefore, the Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this      2nd       day of February, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE